UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
TERREL M. WATSON, GUISEPPINA
CALARCO, and JARRET STRETCH,

                   Plaintiffs,

-against-

MIDLAND CREDIT MANAGEMENT, INC.,

                   Defendant.
-------------------------------------------------------X

                                         **MEMORANDUM & ORDER**
                                       2:18-CV-02400 (DRH)(AKT)

**APPEARANCES:**

**For Plaintiffs:**
BARSHAY SANDERS, PLLC
100 Garden City Plaza, suite 500
Garden City, NY 11530
By:    Craig B. Sanders, Esq.
         David M. Barshay, Esq.
         Jonathan M. Cader, Esq.

**For Defendant:**
HINSHAW & CULBERTSON LLP
800 Third Avenue, 13th Floor
New York, New York 10022
By:    Han Sheng Beh

**HURLEY, Senior District Judge:**

      Plaintiffs Terrel M. Watson ("Watson"), Guiseppina Calarco ("Calarco"), and Jarret

Stretch ("Stretch") (collectively "Plaintiffs") commenced this action asserting that defendant

Midland Credit Management, Inc. ("Defendant") violated the Fair Debt Collection Practices Act

("FDCPA"),  15 U.S.C. § 1692, et seq. Presently before the Court is Defendant's motion,

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint for failure to state a claim. For the reasons set forth below, the motion is denied.

## BACKGROUND

The following allegations of fact are taken from the complaint, and its related exhibits, and are assumed true for the purposes of this motion.

### I.  The Communications from Defendant to Plaintiffs

Plaintiffs are all consumers and Defendant is a debt collector as those terms are defined by the FDCPA. In its efforts to collect separate debts owed by Watson, Calarco, and Stretch, Defendant contacted them by letters dated April 19, 2017, April 26, 2017, and, May 3, 2017, respectively ("the Letters").  The complaint does not state whether the Letters were the initial communication that Plaintiffs received from Defendant. The Letters are identical in all relevant material respects.

The Letters identify the original creditor, show Defendant as the current owner of the debt, and state the "current balance" of the debt owed. Below this information, the Letters inform Plaintiffs that they have been "pre-approved" for a "discount program" and that participating in the program allows Plaintiffs to "put this debt behind you." To this end, the Letters offer three different options for debt repayment at a discounted rate ("the Discount Offers") and indicate an "[e]xpiration date" for the Discount Offers. The portion from one of the Letters (Watson's) that pertains to the Discount Offers is shown in "Figure 1" below.

**Figure 1. Excerpted Image from Defendant's Letter to Watson.**



## II.   Plaintiffs' Theory of Liability Under 15 U.S.C. § 1692e

According to Plaintiffs, their debts are subject to the accrual of interest and late payment

fees because: (1) these terms were present in their original credit agreements; (2) "Plaintiffs were

never informed by anyone of any changes to the terms and conditions of their credit cards"; and

(3) the Letters provide "no such indication" of any changes in these terms. (Pls.' Opp. Mem. at

12.)[1]

Considering this, Plaintiffs maintain that the Letters violate 15 U.S.C. § 1692e ("Section

1692e") because they neither state whether acceptance of any of the Discount Offers will fully

resolve Plaintiffs' debts nor clarify whether Plaintiffs' accounts will continue to accrue interest

or incur late payment fees. Plaintiffs argue that the absence of this information from the Letters

could cause consumers to think that acceptance of any of the Discount Offers would either: (1)

---

[1]While there is some ambiguity as to whether Plaintiffs' complaint actually alleges this fact, it is nonetheless reasonable to draw this inference in Plaintiff's favor for the purpose of this motion. Parenthetically, Plaintiffs also emphatically assert this in their opposition memo.

fully resolve their debt (and that, by implication, their debt would not continue to accrue interest or incur late payment fees) or (2) only resolve the "current balance" of the debt as of the date of the letter (and, therefore, not resolve any remaining debt resulting from the continued accrual of interest or imposition of late payment fees after the date of the letter). Since it is only possible for one of these interpretations to be correct, Plaintiffs argue, the Letters are "deceptive" and, thus, violate Section 1692e.

## LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff[s'] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  The plausibility standard is guided by two principles.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions.  Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

## DISCUSSION

### I.  Interpreting the FDCPA Generally

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors," *Sykes v. Mel S. Harris & Assoc. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (citing 15 U.S.C. § 1692(e)), "and also sought to ensure that 'those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged,' " *Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85, 89 (2d Cir. 2008). "These purposes inform the FDCPA's many provisions." *Id.* Because the FDCPA is " 'remedial in nature . . . its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.' " *Hart v. FCI Lender Serv., Inc.*, 797 F.3d 219, 225 (2d Cir. 2015) (quoting *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013).)

### II.  Interpreting Section 1692e of the FDCPA

Section 1692e prohibits a debt collector from, among other things, "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e(10). A communication is deceptive if it is "open to more than one reasonable

interpretation, at least one of which is inaccurate." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012).

Whether a communication complies with Section 1692e is determined from the perspective of the "least sophisticated consumer." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). The purpose of this standard "is to ensure that the statute protects the gullible as well as the shrewd." *Jacobson*, 516 F.3d at 90. It is an objective test, that "preserve[s] the concept of reasonableness." *Id.* "The hypothetical least sophisticated consumer does not have the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer, but is neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d at 130, 135 (2d. Cir. 2010). A consumer who receives a communication that violates the FDCPA need not show he was confused by the communication in order to prevail in his private cause of action. A plaintiff's burden is to demonstrate that the least sophisticated consumer would be confused. *Id.* at 91; *see Easterling,* 692 F.3d at 234 ("By its very nature, . . . the least sophisticated consumers test pays no attention to the circumstances of the particular debtor in question.") "[B]ecause the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view the language in a defendant's collection letter is a question of law." *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 707 (S.D.N.Y. 2013); *see Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) (finding that questions of whether language in collection notices violated 15 U.S.C. §§ 1692g and 1692e(10) presented "[o]nly legal issues").

Section 1692e does not expressly require that, to fall within its prohibition, a representation or means must be material; however, the Second Circuit has held that such a requirement exists. *See Cohen v. Rosicki, Rosicki & Assoc., P.C.*, 897 F.3d 75, 85 (2d. Cir. 2018)

(holding that " '[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement,' and there is no 'reason why materiality should not equally be required in an action based on § 1692e.' ") (quoting *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 758 (9th Cir. 2010)).  The court further explained that "[t]he materiality inquiry focuses on whether the false statement would 'frustrate a consumer's ability to intelligently choose his or her response [to a collection notification].' " *Id.* at 86 (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010)).

### III.  When Nondisclosure of Interest-Related Information Violates Section 1692e

When a consumer's debt may, in fact, increase due to interest or other fees, a debt collector violates Section 1692e by failing to disclose that information in a debt collection notice. *See Avila v. Riexinger & Assoc.*, *LLC.,* 817 F.3d 72, 74 (2d Cir. 2016) (holding that, in this situation, failure to make this disclosure violates Section 1692e because it has the potential to mislead a reasonable consumer). In *Avila*, the Second Circuit provided the following rationale for this rule:

> A reasonable consumer could read [a] notice and be misled into believing that she could pay her debt in full by paying the amount listed on the notice. In fact, however, if interest is accruing daily, or if there are undisclosed late fees, a consumer who pays the "current balance" stated on the notice will not know whether the debt has been paid in full. The debt collector could still seek the interest and fees that accumulated after the notice was sent but before the balance was paid, or sell the consumer's debt to a third party, which itself could seek the interest and fees from the consumer.

*Id.* at 76.

However, the Second Circuit, has declined to extend this disclosure requirement to situations where interest and other fees are *not,* in fact, accruing on a consumer's debt, even when, unbeknownst to the consumer, "a previously dynamic debt is now static." *See Taylor v.*

*Fin. Recovery Serv., Inc.*, 886 F.3d 212, 215 (2d Cir. 2018) ("[W]e hold that a collection notice that fails to disclose that interest and fees are not currently accruing on a debt is not misleading within the meaning of Section 1692e.").[2] In *Taylor*, the court explained that, in this situation, a collection notice would not mislead a consumer in the same way that it did in *Avila* because, unlike in *Avila,* "prompt payment of the amounts stated in [Plaintiffs] notices *would* have satisfied their debts." *Id.* at 214.

Moreover, the Second Circuit explained that failing to disclose this information would, at worst, lead a consumer to mistakenly believe that a debt is still dynamic and that, therefore, "there is a financial benefit to making repayment sooner rather than later." *Id.* "Construing the FDCPA in light of its consumer protection purpose," the court held that this is "not misleading within the meaning of Section 1692e," and that "[t]his supposed harm falls short of the obvious danger facing consumers in *Avila*." *Id.*

Thus, to summarize, under Section 1692e, a debt collector has a duty to disclose that a debt is, *in fact*, subject to the accrual of interest or other fees but does not have a duty disclose that a debt is *no longer* subject to said potential increases. *See Avila*, 817 F.3d at 74; *Taylor*, 886 F.3d at 215.

## IV.  Safe Harbors to 15 U.S.C. § 1692e

In *Avila*, the Second Circuit also recognized a potential danger with requiring debt collectors to disclose to consumers that their debt may increase due to interest or other fees. *See* 817 F.3d at 76 (highlighting the "legitimate concern" that "requiring debt collectors to disclose

---

[2]In their complaint, Plaintiffs alternatively allege, or at least seem to imply, that a failure by Defendant to notify them of a **waiver** of their right to charge interest and late payment fees to Plaintiffs debt would be a violation of Section 1692e.  However, considering the Second Circuit's holding in *Taylor*, this would not be a basis for holding Defendant liable to Plaintiffs under Section 1692e.

this information might lead to more abusive practices, as debt collectors could use the threat of interest and fees to coerce consumers into paying their debts"). To "alleviate" this "legitimate concern" and "minimize litigation under the FDCPA," the court adopted two safe harbor rules whose compliance will shield debt collectors from this form of liability. *Id.* at 77. The court stated:

> We hold that a debt collector will not be subject to liability under Section 1692e for failing to disclose that the consumer's balance may increase due to interest and fees if the collection notice *either* [1] accurately informs the consumer that the amount of the debt stated in the letter will increase over time, *or* [2] clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date.

*Id.* (emphases and alterations added).

Also, the court expressly declined to "hold that a debt collector must use any particular disclaimer" in order to comply with these safe harbor rules. *Id.* Moreover, compliance with either of *Avila's* safe harbor rules, as opposed to both, is sufficient to shield a debt collector from liability under Section 1692e. *See Kraus v. Prof'l. Bureau of Collections of Md., Inc.*, 281 F. Supp. 3d. 312, 320 (E.D.N.Y. 2017) (stating that language in *Avila* discussing the simultaneous use of both safe harbors merely highlights something debt collectors "could" do and not something they "must" do).

## V.   Whether the Letters Sent by Defendant Violate Section 1692e

Here, in accordance with the standard of review for this motion, this Court will assume that, as alleged, Plaintiffs' debts are currently subject to the accrual of interest and late payment fees. Accordingly, this case comes within the purview of the disclosure requirement established by the Second Circuit in *Avila. See* 817 F.3d at 74. Therefore, since the Letters sent by Defendant make no mention of interest or late payment fees, they violate Section 1692e *unless* they conform to one of *Avila's* safe harbor rules.

*Avila's* first safe harbor rule does not apply here because the Letters provide no general indication that Plaintiffs' debts "will increase over time." *See id.* at 77. In terms of *Avila's* second safe harbor rule—i.e. that a debt collector will not be subject to liability if a communication "clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date"—the Letters have several features that suggest its application here. *See id.* Specifically, as discussed below in subsection "A," the Letters are discounted settlement offers with a clear expiration date and a clear indication that their acceptance would fully satisfy Plaintiffs' debts.

However, as discussed below in subsection "B," there are three, distinct options for a discounted settlement within each of the Letters, and only two of these three options set forth the precise amount Plaintiffs would need to pay to satisfy their debts.  Further, the discounted settlement option that fails to state a precise amount is open to the interpretation that interest and fees might still accrue on the debt if Plaintiffs selected said option. Thus, the Letters do not fully comply with the requirements set forth in *Avila.*

### A. Characteristics of the Letters that Bring Them Within the Purview of *Avila's* Second Safe Harbor Rule

The Letters here are not standard debt collection notifications—i.e., communications that simply solicit the payment of a debt and provide essential information such as the amount of debt, who owns it, and how to make a payment.  Communications like these have largely been held by courts in this Circuit to, at least potentially, violate Section 1692e for failing to disclose that interest may accrue on a debt. *See Thomas v. Midland Credit Mgmt., Inc.*, No. 2:17-cv-00523, 2017 WL 5714722, at *1 (E.D.N.Y. Nov. 27, 2017); *Anzelone v. ARS Nat'l. Serv., Inc.*, No. 2:17-cv-04815, 2018 WL 3429906, at *6 (E.D.N.Y. July 16, 2018); *Baptiste v. Carrington Mortg. Serv., L.L.C.*, No. 17-CV-1494, 2017 WL 2861670, at *5 (E.D.N.Y. July, 5 2017).

Rather, here, the Letters are best characterized as "discounted settlement offers"—i.e., offers to settle a debt at a discounted rate if certain conditions, such as payment by a certain date, are met.  Generally, Courts favor the use of discounted settlement offers and are weary of interpreting the FDCPA in a manner that inhibits their use. *See Kraus,* 281 F. Supp. 3d. at 321 (stating that discounted settlement offers "are in the consumers' best interest and should be encouraged, not punished for creatively imagined technical violations in the communication of additional information"); *Sarder v. Academy Collection Serv., Inc.*, No. CV 02-2486, 2005 WL 615831, at *3 (E.D.N.Y. Mar. 3, 2005) ("Put simply, it would be unwise and against the consumers' best interests to restrict opportunities for settlement in such a manner."). The existence of *Avila's* second safe harbor rule reflects this preference because discounted settlement offers usually seek to (1) fully resolve a consumer's debt by (2) payment of a specific sum by (3) a specified date. *See Avila,* 817 F.3d at 77.

In *Kraus*, the court held that a discounted settlement offer ("The *Kraus* Letter"), which has many similarities to the Letters here, complied with *Avila's* second safe harbor rule. *See* 281 F. Supp. 3d. at 319 (holding that "[o]n its face, the [*Kraus*] Letter falls within the *Avila* safe harbor"). The *Kraus* Letter indicated that its purpose was to "offer you an opportunity to pay less than the amount due" in the form of a "40% Settlement Offer." *Id.* at 315. It further stated that "this settlement offer will expire unless we receive your payment of 1,552.45 due in our office on or before 06/20/2016." *Id*. In light of these characteristics, the court held that the plaintiff could not plausibly allege that "the hypothetical 'least sophisticated consumer' would have been misled as to (i) whether payment of the 40% settlement offer would fully satisfy her debt, (ii) the precise amount of the settlement offer, or (iii) the date by which the payment would need to be received by [defendant] to satisfy the debt." *Id.* at 314.

Likewise, the Letters here also convey an offer for Plaintiffs "to pay less than the amount due," by accepting one of three discount options. (Compl. Ex. 1.) Further, the Letters, just like the *Kraus* Letter, indicate an "[e]xpiration date" for the Discount Offers. (*Id.*) Moreover, prior to listing the Discount Offers, the Letters all state that acting on the Discount Offers will allow Plaintiffs to "put this debt behind you." (*Id.*) Surely, the least sophisticated consumer would read this language to mean that accepting a Discount Offer by its expiration date would fully satisfy a debt because that is obviously what it means to "put [a] debt behind you." *Cf. Clomon*, 988 F.2d at 1319 (stating that the "least sophisticated consumer standard" also protects debt collectors from "unreasonable misinterpretations of collection notices").

## B.  Why the Letters Do Not Comply with *Avila's* Second Safe Harbor Rule

There is one key difference, however, between the *Kraus* Letter and the Letters here—their compliance with the second safe harbor rule's requirement to state the "precise amount of the settlement offer." *See Kraus,* 281 F. Supp 3d. at 314 (discussing the requirements for compliance with *Avila's* second safe harbor rule). Specifically, the *Kraus* Letter contains one discounted settlement offer for the precise amount of $1,552.45. *See id.* at 315. By contrast, the Letters here include three discounted settlement options, and, while the first two options communicate a precise amount, the third option does not. (Compl. Ex. 1.)

For instance, as shown in "Figure 1" above, plaintiff Watson would know precisely how much he would need to pay Defendant with "Option 1" ($419.03) and "Option 2" (six payments of $93.11). However, Watson would not know how much he would ultimately need to pay Defendant with "Option 3" because it specifies neither the exact dollar amount nor total number of monthly payments needed to satisfy the debt.

Moreover, to agree to "monthly payments as low as" $50 per month, Defendant might require the (allegedly) continued imposition of interest and late payment fees on the debt. Given (1) Option 3's ambiguity and (2) Option 3's significantly smaller monthly payment amount, this is certainly a possibility. And, if it were, in fact, true, then Defendant would be in violation of Section 1692e given *Avila's* requirement to disclose that interest and other fees *may* accrue on a debt. *See Avila,* 817 F.3d at 74. Thus, since Plaintiffs' complaint contains a "plausible claim for relief," it survives a motion to dismiss. *Iqbal,* 556 U.S. at 679.

Last, it is worth noting that if, in fact, as Defendant claims, interest and other fees are no longer accruing on Plaintiffs' debts, then, under *Taylor,* the letters would not be misleading. *See* 886 F.3d at 215 (holding that failure to disclose that a debt is no longer accruing interest or other fees is not a Section 1692e violation). However, this cannot be addressed on a Rule 12(b)(6) motion.

**CONCLUSION**

Defendant's motion to dismiss pursuant to Rule 12(b)(6) is denied.

**SO ORDERED.**

Dated: Central Islip, New York
        June 19, 2019

s/ Denis R. Hurley
Denis R. Hurley
Unites States District Judge
